OSTASZ, Appellant,

v.

MEDICAL COLLEGE OF OHIO, Appellee.

[Cite as *Ostasz v. Med. College of Ohio* (1996), 114 Ohio App.3d 391.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API03–315.

Decided Sept. 12, 1996.

*Thomas A. Sobecki*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Susan C. Walker*, Assistant Attorney General, for appellee.

CLOSE, Judge.

This is an appeal from determination of personal immunity under R.C. 9.86. The Ohio Court of Claims found that Dr. Terrence J. Horrigan had not acted with a malicious purpose, bad faith, wantonness or recklessness, or manifestly outside the scope of his employment with defendant-appellee, Medical College of Ohio, when he sent a negative letter of recommendation concerning plaintiff-appellant, Dr. Thaddeus Ostasz. As a result, Dr. Horrigan was granted personal immunity under R.C. 9.86, and the courts of common pleas were determined to be without jurisdiction to hear appellant's claims for defamation, business interference, intentional or reckless infliction of emotional distress, breach of contract and promissory estoppel.

Appellant brings the following single assignment of error:

"The court of claims of Ohio committed substantial, prejudicial and reversible error in finding that Dr. Terrence J. Horrigan is entitled to personal immunity under Ohio Revised Code Section 9.86."

The relevant facts are as follows. Appellant was denied hospital privileges as a result of a negative letter of recommendation from Horrigan. Horrigan was the director of the OB/GYN Residency Program at the Medical College of Ohio where appellant had received and completed his residency training. As director, Horrigan's responsibilities included responding to credential requests concerning residents and former residents of the Medical College of Ohio.

As was customary practice, a Toledo hospital from which appellant sought privileges in 1994 sent Horrigan, as current director of appellee's residency program, a request for information on appellant's credentials and enclosed appellant's signed waiver and release. Appellant's application had identified appellee as the institution where appellant received his residency training and had enclosed a signed waiver and release. Over the years, Horrigan had

responded to other credential requests concerning appellant. At issue here is Horrigan's October 11, 1994 letter, which was critical of appellant's qualifications.

It appears that appellant has had difficulty obtaining hospital privileges and that he had not been able to find a job as a physician from the time he completed his residency in 1987, until October 1991, when he obtained a position with a hospital in the Chicago area. Prior to receiving hospital privileges in Chicago and upon feeling that Horrigan's letters were impeding his ability to find employment, appellant sought the assistance of Dr. James Croak to stop the negative medical recommendations. Dr. Croak had been appellant's supervisor during appellant's residency. Dr. Croak met with Horrigan and apparently related appellant's medical abilities in favorable terms. Thereafter, Horrigan issued positive letters of recommendation, and appellant received hospital privileges in Chicago.

It is undisputed that Horrigan had no firsthand knowledge of appellant because Horrigan was not employed with appellee during the time period when appellant was a resident. Horrigan testified that he based his letters of recommendation on conversations he had had with other doctors and on a review of appellant's file. Prior to 1994, however, Horrigan had reviewed only appellant's evaluation file and had not seen the correspondence file, which contained negative evaluations and reports. The October 11, 1994 letter, at issue here, was written after Horrigan had reviewed both the evaluation file and the correspondence file.

In reviewing the correspondence file, Horrigan found it significant that negative comments and letters from several other residents were contained in appellant's file and that appellant had failed some examinations, twice been placed on probation, and that, most significantly, appellant's chief residency rotation had been changed so that appellant was placed in a different hospital with a lighter patient load and at a lower-risk level. Consequently, appellant was not permitted to perform the main hospital's high-volume, high-risk patient services during his final year.

Although Horrigan wrote a negative letter of recommendation to the Toledo hospital, Horrigan cautioned the hospital not to use his letter as a deciding factor because all of the information was dated. It had been nearly eight years since appellant had completed the residency program, and Horrigan had no knowledge of what had occurred during those most recent eight years. Hospital privileges, however, were again ultimately denied. This lawsuit ensued. On appeal, appellant challenges the trial court's judgment, which held that Horrigan is entitled to personal immunity under R.C. 9.86.

The crux of this appeal centers around whether the trial court abused its discretion and whether its findings are against the manifest weight of the evidence. This court will not substitute its judgment for that of the trial court

when there exists competent, credible evidence supporting the trial court's findings of fact and conclusions of law. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. This is because it is the trier of facts who has the best opportunity to view the witnesses and assess the credibility of the evidence. *Id.* "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

With that in mind, we note that R.C. 9.86 provides personal immunity for state employees unless "the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." As this court has previously stated, "[i]t is only where the acts of state employees are motivated by actual malice or other such reasons giving rise to punitive damages that their conduct may be outside the scope of their state employment." *James H. v. Dept. Of Mental Health & Mental Retardation* (1980), 1 Ohio App.3d 60, 61, 1 OBR 6, 8, 439 N.E.2d 437, 439.

Appellant does not challenge the trial court's finding that Dr. Horrigan acted within the scope of his employment. Rather, appellant claims that the trial court erred in finding that Horrigan did not act with a malicious purpose, in bad faith, or in a wanton or reckless manner. Upon review of the record, we conclude that Horrigan's letters of recommendation, whether considered individually or in total, simply do not show a malicious purpose, bad faith, wanton manner or recklessness.

As noted above, appellant's competency was questioned throughout his residency program. Appellant was placed on probation during both his second and third years, with suspension contemplated in his third year. Appellant's fourth year curriculum was altered to restrict his responsibilities as chief resident. Horrigan testified that these matters gave him grave concern regarding appellant's competencies.

Although Horrigan never knew appellant, Horrigan took care in responding to the request for information regarding appellant's credentials. Horrigan testified that, before he wrote the negative recommendation, he reviewed appellant's file, which contained documentation of the above problems, and spoke with physicians who knew appellant during appellant's residency.

Thus, competent, credible evidence supports the trial court's determination that Horrigan acted without a malicious purpose, bad faith, wantonness or recklessness. In giving the proper deference to the finder of facts, we cannot say

the trial court erred in finding that Horrigan was entitled to personal immunity under R.C. 9.86.

Appellant's assignment of error is, therefore, overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

PETREE, P.J., and TYACK, J., concur.