## OSTASZ

### v.

## MEDICAL COLLEGE OF OHIO.

Court of Claims of Ohio.

No. 95–05374.

Decided July 9, 1997.

See also, 114 Ohio App.3d 391, 683 N.E.2d 352.

*Thomas A. Sobecki* and *Gary O. Sommer*, for plaintiff.

*Betty D. Montgomery*, Attorney General, and *Susan C. Walker*, Assistant Attorney General, for defendant.

FRED J. SHOEMAKER, Judge.

This cause is before the court upon defendant's March 17, 1997 motion for summary judgment. On May 1, 1997, plaintiff filed a response. A non-oral hearing was held on May 2, 1997. The court carefully considered defendant's October 11, 1994 recommendation letter and the testimony from the February 14, 1996 evidentiary hearing, and finds the following facts.

During the summer of 1994, plaintiff, Dr. Thaddeus Ostasz, filed for hospital privileges at Flower Hospital in Toledo. Plaintiff signed a waiver and release form identifying the Medical College of Ohio ("MCO"), as the institution where he completed his residency. Accordingly, Dr. Horrigan, the current director at MCO, was sent a request by Flower Hospital's credentials committee via its agent, First Interhealth, for plaintiff's credential information. A review of plaintiff's complete residency file by Dr. Horrigan revealed that plaintiff had (1) failed some examinations, (2) been placed on probation on two occasions, and (3) had his privileges suspended pending a hearing to determine whether he should be permitted to continue in the residency program. In addition, plaintiff did not complete his training at Toledo Hospital, where high-risk pregnancies are handled. Last, there were six letters in plaintiff's file from other residents who had reservations about plaintiff's competency as a physician. As a result of the

aforementioned reasons, Dr. Horrigan sent a letter to Flower Hospital expressing his reservations about plaintiff's qualifications.

In his complaint, plaintiff alleges defamation, business interference, intentional or reckless infliction of emotional distress, negligent infliction of emotional distress, promissory estoppel, and breach of contract.

R.C. 2305.25 provides a qualified privilege from civil damages for providing information to all health care entities involved in credentialing, if the information is provided "without malice and in the reasonable belief that such information is warranted by the facts known * * *." Public policy dictates that this information should be protected by qualified privilege "in order to aid in the dissemination of information * * * thereby improving the quality of health care administered to the general public." *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 114, 573 N.E.2d 609, 612.

The letter by Dr. Horrigan reflected that he was "uncomfortable relating second-hand information" and that his recommendation should not be a deciding factor in Flower Hospital's determination of whether plaintiff should be afforded privileges. Rather, Dr. Horrigan recommended that Flower Hospital closely evaluate plaintiff's professional experiences for the period of time since leaving the MCO residency program. Nothing in the letter indicates that Dr. Horrigan possessed a malicious purpose in communicating his reservations about plaintiff's capabilities. On February 14, 1996, this court held an evidentiary hearing and granted civil immunity to Dr. Horrigan, finding that he had not acted with malicious purpose. On September 12, 1996, the Tenth District Court of Appeals affirmed the decision rendered by the Court of Claims, concluding that "[Dr.] Horrigan's letters of recommendation, whether considered individually or in total, simply do not show a malicious purpose, bad faith, wanton manner or recklessness." *Ostasz v. Med. College of Ohio* (1996), 114 Ohio App.3d 391, 394, 683 N.E.2d 352, 354.

A letter from the institution of a physician's residency, disseminated to hospitals that are conducting an assessment on whether to grant a physician hospital privileges, is protected by a qualified privilege. In order to overcome a qualified privilege, plaintiff must present clear and convincing evidence that defendant acted with actual malice. *Jacobs*, 60 Ohio St.3d at 114, 573 N.E.2d at 612–613. Having carefully reviewed the letter and testimony from the February 14, 1996 evidentiary hearing, this court finds that defendant did not possess a malicious purpose and, therefore, did not act with malice. As a result, defendant is entitled to judgment as a matter of law on claims regarding defamation, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress.

▉ Additionally, plaintiff signed a waiver and release identifying MCO as the institution where he completed his residency. Plaintiff's defamation claims are barred by the release. *Wall v. Ohio Permanente Med. Group* (June 16, 1997), Cuyahoga App. No. 69841, unreported, 1997 WL 298269.

▉ Plaintiff's claims of breach of contract and promissory estoppel are based on an alleged promise made between Dr. Horrigan and Dr. Croak in June or July 1990, during which "Dr. Horrigan told Dr. James M. Croak that he would not give out any derogatory information about plaintiff in the future." Plaintiff alleges that he is the third-party beneficiary of this contract/promise. Nothing in the evidence or testimony reflects any documentation or consideration of this contract/promise. Whether Dr. Horrigan made the promise, R.C. 4731.22 nonetheless requires that physicians provide truthful information in response to a credentials request, and the testimony and evidence from the evidentiary hearing support the truthfulness of Dr. Horrigan's letter. Any contract/promise between Dr. Horrigan and Dr. Croak that does not comply with the law will not be enforced, directly or equitably. *Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty., & Mun. Emp., AFL-CIO* (1991), 61 Ohio St.3d 658, 664, 576 N.E.2d 745, 751–752; *Walsh v. Bollas* (1992), 82 Ohio App.3d 588, 593, 612 N.E.2d 1252, 1255–1256. Therefore, the claims of breach of contract and promissory estoppel are, as a matter of law, without merit.

*Judgment for defendant.*

FRED J. SHOEMAKER, J., retired, the Franklin County Court of Common Pleas, sitting by assignment.