OPINION
In 1992, appellant, Li-Jen Ting, M.D., obtained staff membership and clinical privileges at Fairfield Medical Center. Prior to 1992, appellant had staff privileges with appellee, Good Samaritan Medical Center, then known as Goddard Memorial Hospital.
On January 6, 1993, appellant and appellee entered into a settlement agreement whereby appellant agreed to dismiss a lawsuit against appellee in consideration of appellee's promise to follow certain procedures and make certain statements when responding to future inquiries about appellant.
In 1994, pursuant to Fairfield Medical Center's bylaws, appellant reapplied to be reappointed to the medical staff. As part of the application process, appellant signed consent forms wherein he acquiesced to background inquiries.
In 1995, a credentialing verification company sent appellee a request for information about appellant. On March 6, 1995, John O'Halloran, M.D., appellee's Vice President of Medical Affairs, sent the company a letter.
On October 16, 1995, Fairfield Medical Center sent appellee a letter requesting information about appellant. On January 24, 1996, Joseph Weinstein, M.D., appellee's interim Vice President of Medical Affairs, forwarded Dr. O'Halloran's letter to appellee.
On March 18, 1996, appellant filed a complaint against appellee for breach of contract, breach of duty of good faith and fair dealing, tortious interference with business relations, tortious interference with contractual relationship, defamation and unlawful disparagement. In September of 1996, appellee terminated appellant's staff membership and clinical privileges.
On September 15, 1997, appellee filed a motion for summary judgment. By memorandum of decision filed January 15, 1998 and judgment entry filed January 23, 1998, the trial court granted the motion.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE IT NEGLECTED ITS MANDATORY DUTY UNDER CIV.R. 56(C) TO THOROUGHLY EXAMINE ALL APPROPRIATE MATERIALS FILED BY THE PARTIES.
II
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE DR. TING ADDUCED EVIDENCE SUFFICIENT TO CREATE GENUINE, TRIABLE ISSUES OF FACT.
III
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WITH REGARD TO APPELLANT'S DEFAMATION CLAIM BECAUSE APPELLANT MET ITS BURDEN OF PRODUCTION BY PRESENTING EVIDENCE OF ACTUAL HARMS SUCH AS IMPAIRMENT TO REPUTATION AND STANDING IN THE COMMUNITY, PERSONAL HUMILIATION, MENTAL ANGUISH AND SUFFERING.
IV
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE APPELLANT'S DEFAMATION ACTION BECAUSE SAID DEFAMATION IS PER SE AND IN SUCH INSTANCES ACTUAL DAMAGES NEED NOT BE PLEADED OR PROVEN, BUT RATHER ARE A MATTER OF COMMON NOTORIETY AND ARE TO BE PRESUMED BY THE JURY.
V
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE APPELLANT'S CONTRACT ACTION BECAUSE APPELLANT SUBMITTED EVIDENCE OF THE EXISTENCE AND BREACH OF A CONTRACT AND IS ACCORDINGLY ENTITLED TO A JURY AWARD OF AT LEAST NOMINAL DAMAGES.
 I, II, III, IV, V
Appellant claims the trial court erred in granting summary judgment to appellee. We disagree, but find summary judgment appropriate under a different analysis.
Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule has recently been reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins
(1996), 75 Ohio St.3d 447, 448:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
Appellant's complaint stems from an alleged breach of the settlement agreement between appellant and appellee. The settlement agreement provides in pertinent part as follows:
 2. The Hospital agrees that, with respect to any such inquiry, only the Medical Director will respond.
 3. In response to any such inquiry, the Medical Director will state, in words or substance, that:
 a. Dr. Ting was a member of the Hospital's associate medical staff from May, 1992;
 b. Dr. Ting resigned voluntarily from the medical staff in May, 1992 to relocate to another state;
 c. There were no malpractice claims or suits against Dr. Ting while he served as a member of the Hospital's medical staff; and
 d. The Hospital did not receive any patient complaints about Dr. Ting while he served on the Hospital's medical staff.
 4. The Hospital agrees that if anyone inquiring about Dr. Ting seeks additional information beyond the response set forth above, the Medical Director will inform Dr. Ting forthwith, by certified mail — return receipt requested.
 7. The Hospital agrees that it will not disparage Dr. Ting or comment in any way about Dr. Ting personally or Dr. Ting's providing of medical services at the Hospital except as set forth in Paragraphs 1-4.
In Ohio, contracts forbidden by law are unenforceable. Statev. The Executor of Joel Buttles (1854), 3 Ohio St. 309, paragraph seven of the syllabus. See also, Cincinnati v. Ohio Council 8,Am.Fedn. of State, Cty., Mun.Emp., AFL-CIO (1991), 61 Ohio St.3d 658;Walsh v. Bollas (1992), 82 Ohio App.3d 588.
As noted by Judge Shoemaker in Ostasz v. Medical College ofOhio (1997), 88 Ohio Misc.2d 6, 9, "R.C. 4731.22 nonetheless requires that physicians provide truthful information in response to a credentials request * * *." Pursuant to subsection (B)(5) of said statute, physicians shall refrain from "publishing a false, fraudulent, deceptive, or misleading statement." Said section defines a "false, fraudulent, deceptive, or misleading statement" as follows:
 a statement that includes a misrepresentation of fact, is likely to mislead or deceive because of a failure to disclose material facts, is intended or is likely to create false or unjustified expectations of favorable results, or includes representations or implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived.
The settlement agreement sub judice clearly contemplates the giving of a misleading statement that includes "implications that in reasonable probability will cause an ordinarily prudent person to misunderstand or be deceived." The whole truth of appellant's tenure with appellee was not to be relayed to anyone who inquired. The "words or substance" as set forth in the settlement agreement at paragraph three would tend to be misleading.
Appellant, by seeking to have the settlement agreement enforced, is attempting to enforce an agreement considered void and against public policy under Ohio law. The laws of this state reject such an action.
Based upon our review, we find the agreement is contrary to the statutory prohibitions of R.C. 4731.22 and is void and unenforceable.[1] Although the trial court granted summary judgment to appellee on other grounds, pursuant to Smiddy we find the trial court's decision was correct for the reason the agreement is unenforceable in Ohio.
Assignments of Error I, II, III, IV and V are denied.
The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.
By Farmer, P.J. and Wise, J. concur.
Hoffman, J. dissents.
[1] HCQIA reporting requirements as set forth in42 USCS §§ 11131-11137 illustrate the public policy concerns regarding physicians' practices.